**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

A. H., a minor, by her parent,
and legal guardian,
IRIA RILLEY,

    Plaintiff,

v.                                                        Case No. 08-C-548

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

    Defendant.

## DECISION AND ORDER

### NATURE OF CASE

The plaintiff, a minor, by Iria Rilley, her parent and legal guardian, commenced this action on June 26, 2008, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying her application for supplementary security income benefits. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

### PROCEDURAL HISTORY

On August 31, 2004, the plaintiff filed an application for supplementary security income (SSI). The plaintiff alleges that she became disabled because of a congenital heart condition called truncus arteriosis. The plaintiff's application was initially denied on November 18, 2004, and, upon reconsideration, denied again on March 11, 2005. Pursuant to the plaintiff's

request, a hearing was held before an administrative law judge (ALJ) on May 30, 2007. The plaintiff, who was represented by counsel, and Iria Rilley,[1] appeared and testified at the hearing.

In a June 22, 2007, decision, the ALJ found that the plaintiff, who was born on October 16, 1997, and was a school-aged child at the time of the decision, had never engaged in any substantial gainful activity. Further, the ALJ found that the plaintiff suffers from congenital heart disease with a history of two surgical repairs, but that she does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926). In determining the degree of limitation in each of the six functional domains, the ALJ considered medical evidence of record and other required relevant factors. The ALJ found that the plaintiff had a "less than marked limitation" in the domain of health and physical well-being, but that she had no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself.

According to the ALJ, the plaintiff and her mother testified "that she is doing very well." (Tr. 27). Additionally, the ALJ found that the objective medical evidence established that the plaintiff has a serious congenital heart defect, but that "since at least 2004, she has had no complications and is able to lead an entirely normal lifestyle except for some limitation in exercise tolerance." (Tr. 30). When the ALJ considered the plaintiff's complaints and allegations about her limitations in light of all of the objective medical evidence and the record

---

[1] A Disability Report - Appeal lists Iria Rilley as the plaintiff's grandparent. See Tr. 69.

as a whole, he concluded that the plaintiff has not been disabled as defined in the Social Security Act since August 31, 2004, the date the application was filed. Following the hearing, the record was held open to obtain updated medical evidence. Additional medical evidence was submitted for consideration by the ALJ.

The plaintiff appealed the decision to the Appeals Council and submitted evidence for the Appeals Council's consideration. When the Appeals Council denied the plaintiff's request for review, the ALJ's decision became the Commissioner's final decision.

The history of the case is well summarized in the record. Consequently, the court will engage only in a limited discussion of the facts relevant to this decision.

## **APPLICABLE LAW**

A court's review of the Commissioner's decision is limited. Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see also, Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the Commissioner's decision, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986) (citing Garfield v. Schweiker, 732 F.2d 605, 610 [7th Cir. 1984]). All evidence present for the ALJ to review at the time of his

decision may be considered by the court reviewing the decision of the ALJ. See Eads v. Sec'y of the Dep't of Health and Human Servs., 983 F.2d 815, 817 (7th Cir. 1993). Additional evidence may be submitted to the Appeals Council in an effort to seek review. However, when the Appeals Council denies review, that evidence cannot be used by this court in analyzing the ALJ's decision because the ALJ did not have the benefit of the additional evidence when he made his findings. See Rice v. Barnhart, 384 F.3d 363, 366 n.2 (7th Cir. 2004); see also, Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993).

This court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434-35 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

For a child to be "disabled" and qualify for SSI, he or she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child is disabled, the Social Security Administration employs a three-step sequential analysis. 20 C.F.R. § 416.924(a)-(d). First, a determination is made whether the child is engaged in substantial gainful activity, and if so, the child is not disabled. Brindisi v. Barnhart, 315 F.3d 783, 785 (7th Cir. 2003) (citing 20 C.F.R. § 416.924[a]); 20 C.F.R. § 416.924(b). Second, the Commissioner determines whether the child has a "severe" medical impairment or combination of impairments. 20 C.F.R.

- 4 -

§ 416.924(c). If the child has no such severe impairments, the child is not disabled. Third, to be considered disabled, the child's impairment or combination of impairments must meet, medically equal or functionally equal the requirements of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings). 20 C.F.R. § 416.924(d); see also, Brindisi, 315 F. 3d at 785 (citation omitted). For a child's impairment to "functionally equal to the listings," it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a); Brindisi, 315 F.3d at 785 ("To find an impairment functionally equivalent to a listing, an ALJ must analyze its severity in five age-appropriate categories and find an 'extreme' limitation in one category or a 'marked' limitation in two categories.").

The ALJ will consider how a child functions in his or her activities in terms of six domains. 20 C.F.R. 416.926a(b)(1). "These domains are broad areas of functioning intended to show what a child can or cannot do." Id. These domains are the following:

(i) Acquiring and using information;
(ii) Attending and completing tasks;
(iii) Interacting and relating with others;
(iv) Moving about and manipulating objects;
(v) Caring for yourself; and,
(vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).

A child will be found to have a "marked" limitation in a domain when her impairments interfere seriously with her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A "marked" limitation also means a limitation that is "more than moderate," but "less than extreme." Id. An "extreme" limitation in a domain exists when a child's impairments interfere very seriously with her ability to independently initiate, sustain,

- 5 -

or complete activities. 20 C.F.R. § 416.926a(e)(3). "Extreme" limitation also means a limitation that is "more than marked," and is the rating given to the worst limitations. Id. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. Id. The plaintiff has the burden of establishing that her condition meets or equals a listed impairment. Maggard v. Apfel, 167 F.3d 376, 379 (7th Cir. 1999).

## **ANALYSIS**

In this case, the ALJ evaluated whether the plaintiff was disabled in accordance with the three-step sequential evaluation process set out in the regulations. On appeal, the plaintiff asserts that the ALJ failed to apply the correct legal standards to the evidence and erred in assessing the six domains of functioning when he found that her limitations are not functionally equivalent to the impairments in the Listings. In particular, the plaintiff contends that the ALJ erred in finding that she had a "less than marked" limitation in the domain of health and physical well-being and in finding that she had no limitation in the domain of moving about and manipulating objects. She maintains that she is severely limited in two of the six functional domain categories. The plaintiff asserts that her severe heart condition not only affects her health and physical well being, but it also significantly affects her ability to move about. She asserts that she has a limited exercise tolerance and has to be careful so that she does not over-exert herself. The plaintiff further contends that the ALJ's analysis is not based on substantial evidence of record.

In response, the Commissioner asserts that substantial evidence supports the ALJ's finding that the plaintiff's impairments did not functionally equal a listed impairment. The Commissioner further maintains that the ALJ reasonably considered the evidence and expressed his reasoning in a way that permits meaningful judicial review.

**Whether the ALJ's Determination Regarding the Plaintiff's Health and Physical Well-Being is Supported by Substantial Evidence.**

Health and physical well-being refers to the cumulative physical effects that physical and mental impairments – and any treatments associated with those impairments – have on a child's functioning. 20 C.F.R. § 416.926a(l). This domain includes effects caused by the impairment or combination of impairments that are not considered in the domain of moving about and manipulating objects. See Id. The Code of Federal Regulations states the following as some issues to consider when analyzing this domain:

> (1) A physical or mental disorder may have physical effects that vary in kind and intensity, and may make it difficult for you to perform your activities independently or effectively. You may experience problems such as generalized weakness, dizziness, shortness of breath, reduced stamina, fatigue . . . or local or generalized pain.
>
> (2) In addition, the medications you take . . . or the treatments you receive (e.g., chemotherapy or multiple surgeries) may have physical effects that also limit your performance of activities.
>
> (3) Your illness may be chronic with stable symptoms, or episodic with periods of worsening and improvement. We will consider how you function during periods of worsening and how often and for how long these periods occur. You may be medically fragile and need intensive medical care to maintain your level of health and physical well-being. In any case, as a result of the illness itself, the medications or treatment you receive, or both, you may experience physical effects that interfere with your functioning in any or all of your activities.

20 C.F.R. 416.926a(l)(1)-(3).

> *Examples of limitations in health and physical well-being.* The following examples describe some limitations . . . [and] do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage . . .
>
> (i) You have generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of your impairment(s).
>
> (ii) You have somatic complaints related to your impairments . . .

(iii) You have limitations in your physical functioning because of your treatment.

(iv) You have exacerbations from one impairment or a combination of impairments that interfere with your physical functioning.

(v) You are medically fragile and need intensive medical care to maintain your level of health and physical well-being.

20 C.F.R. § 416.926(a)(l)(4).

The ALJ determined that the plaintiff has a "less than marked" limitation in this domain. The plaintiff, who was born on October 16, 1997, was six-years-old when her parent initially filed for SSI for her and nine-years-old on the date of the ALJ's decision. At birth, doctors diagnosed the plaintiff with a congenital heart condition called truncus arteriosis and she has been under the care of various doctors, including her pediatrician, Zarah McLean, M.D., and pediatric cardiologist, David Friedberg, M.D. (Tr. 92-93).

On October 29, 1997, doctors repaired her heart condition by inserting a homograft to correct the defect. See Tr. 92, 126. Two further surgeries occurred: On April 14, 1999, ("balloon angioplasty of bilateral branch pulmonary stenosis") and on October 23, 2000, ("replacement of homograft with #19 homograft and patch angioplasty of left pulmonary artery and right pulmonary artery"). (Tr. 93). The ALJ observed that since 2000, the plaintiff has not had another major heart operation and no complications since 2004. The plaintiff continues to receive regular heart check-ups, which often include an electrocardiogram or echocardiogram. See Tr. 93, 94, 126, 135.

According to Dr. Friedberg, by October 2003, the plaintiff was "doing very well" in terms of her heart and required no medications beyond prophylactic antibiotics before invasive procedures. (Tr. 94). In July 2004, Dr. McLean had some concerns about a heart murmur

- 8 -

and recommended an early appointment with Dr. Friedberg. Dr. Friedberg saw the plaintiff and scheduled an echocardiogram in August 2004. He reported on the post operative repair of plaintiff's truncus arteriosis, noting that there was an "[e]xcellent result with only trivial homograft insufficiency and trivial truncal valve insufficiency." (Tr. 97).

On November 6, 2004, the plaintiff suffered a laceration on her head caused by blunt force trauma when she walked into a door. A Case Development Worksheet dated January 24, 2005, states that the plaintiff has "refractive amblyopia" in her right eye. (Tr. 107). In a report of a vision examination conducted in January 2005, the examining eye doctor noted that the plaintiff has refractive amblyopia in her right eye and that her vision problems "are typical of patients with this condition." (Tr. 115). The eye doctor reported that with correction the "[c]hild should be able to do most child appropriate activities." Id.

In November 2004, Dr. Chan completed a Childhood Disability Evaluation Form. (Tr. 118-23). Based on his review, Dr. Chan found that the plaintiff had a severe impairment or combination of impairments, but that the impairment(s) did not meet, medically equal, or functionally equal the Listings. Additionally, Dr. Chan found, as relevant here, that the plaintiff had no limitations in the domain of moving about and manipulating objects and only "less than marked" limitations in the domain of health and physical well-being. (Tr. 122). He observed that with respect to the domain of health and physical well-being, the plaintiff had repair of truncus arteriosis "with excellent results" with "only trivial homograft insufficiency and trivial truncal valve insufficiency." Id. Dr. Irene Ibler affirmed Dr. Chan's original evaluation in March 2005. (Tr. 33-34, 119).

A stress test performed on May 24, 2006, found that the plaintiff had "some level of exercise intolerance, measuring at the 10[th] percentile for her age, but that the test ended not

- 9 -

because of cardiac problems, but rather because of muscle fatigue." (Tr. 126). The plaintiff experienced no chest pain or eschemic changes during the test. In his report, Dr. Friedberg stated: "As far as her cardiac function is concerned, she certainly has no limitations." (Tr. 132). He noted that the plaintiff had a mild problem breathing after the test, but that administering an albuterol inhaler relieved the symptoms. Dr. Friedberg further stated that the plaintiff could benefit from some more physical training. He reported that he advised the plaintiff's mother that the plaintiff "should be encouraged to exercise more." (Tr. 132).

In February 2007, the plaintiff experienced chest pain while running in gym class and went to the emergency room. (Tr. 27, 139-41). The chest pain was resolved and the plaintiff was released. While in the emergency room, doctors x-rayed the plaintiff's chest, and the radiologist found that some of the wires placed on her sternum had fractured since her last x-ray. (Tr. 139). On May 30, 2007, at the hearing, the plaintiff's mother spoke about the x-ray and her belief that it meant more surgery would eventually be necessary. (Tr. 262-63).

The plaintiff testified at same hearing that she could run for "a little bit," but that she tired easily. (Tr. 261). She stated that sometimes her side and chest hurt. The plaintiff further described a gym class where she ran 18 laps with the rest of the class, but she had to walk part of the way and felt tired afterwards. In addition, when asked about the plaintiff's ability to use her hands in relation to manipulating objects, the plaintiff's mother testified that the plaintiff had no problems. (Tr. 264).

In a May 30, 2007, report to Dr. McLean, Dr. Friedberg stated that the plaintiff "really is doing quite well, and except for some headaches, has no other symptoms." (Tr. 126). He stated that the plaintiff "is able to function in school and does take gym." Id. He further stated that "[s]he thinks she is slightly limited in exercise tolerance in gym. She did have a stress test

- 10 -

in May of last year, which showed that she had a slightly decreased exercise tolerance." Id. Her electrocardiogram "was within normal limits" and Dr. Friedberg recommended the continued prophylactic use of antibiotics before invasive procedures. Id. Dr. Friedberg did not opine on whether more surgery was required in the near future, but did state that an albuterol inhaler could be used to help the plaintiff with breathing problems in the future.

In his decision, the ALJ acknowledged that the plaintiff has a congenital heart defect that required two surgical repairs, other tests, and continued monitoring. (Tr. 30). However, the ALJ also noted that since at least 2004, the plaintiff has had no serious complications and leads a normal lifestyle with the exception of some limitation in her exercise tolerance. (Tr. 30). Also, a stress test in May 2006, showed that the plaintiff had "some level of exercise intolerance" which required some help from an albuterol inhaler, but that the plaintiff presented no cardiac abnormalities during the test. (Tr. 27, 130-32). The ALJ further noted that the plaintiff had one episode of chest pain from exercise in February of 2007, but she was released after the pain resolved. (Tr. 27). Also, the ALJ noted that at the plaintiff's most recent examination, Dr. Friedberg opined she had a "slightly decreased exercise intolerance." (Tr. 27, 126). Finally, the ALJ referenced the D.D.S. report which concluded that the plaintiff had a "less than marked" limitation in the domain of health and physical well-being, and, therefore, the plaintiff is not disabled. (Tr. 28-30).

The plaintiff identifies evidence she believes demonstrates "marked," or higher, limitations in her health and physical well-being. She maintains that her history of heart surgeries, continued monitoring, and need for antibiotics before invasive procedures such as dental work, is evidence of a "marked" or greater impairment in this domain. The ALJ, however, noted that there was a history of heart surgeries in the plaintiff's record and a need

- 11 -

for ongoing monitoring of the plaintiff's health. (Tr. 27, 30). Ongoing health monitoring implies that doctors continue to examine and assess the plaintiff's health which includes additional medical care if necessary (i.e. medications). The ALJ conceded that the plaintiff has a serious congenital heart defect, but noted that since at least 2004, there has been no complications from a cardiac standpoint, and that the plaintiff's cardiologist opined that she had no problems and was doing well. (Tr. 27, 30).

The plaintiff further claims that the ALJ did not consider the likelihood of the necessity of future surgeries. The only evidence the ALJ had before him at the time of his decision on the possible need for future surgery, was the plaintiff's mother's testimony about her belief that the fractured wires on the plaintiff's sternum, found in a February 2007 x-ray, showed that new surgery was likely necessary soon. (Tr. 91, 262-63). The plaintiff points to a letter written by Diane Rogozinski, R.N., a nurse clinician, as evidence of the likelihood of future surgery. (Tr. 19, 227). However, that letter was written three days after the ALJ issued his decision. Because that evidence was submitted after the ALJ made his ruling and the Appeals Council denied review, that evidence cannot be used by this court in its review of the ALJ's decision. See Rice, 384 F.3d at 366 n.2. When the Appeals Council denies review of the ALJ's decision, it is not the Appeals Council decision that the court reviews, but the ALJ's decision. Therefore, it is not appropriate to judge whether the ALJ made the correct decision using evidence that was not before him. See Eads, 983 F.2d at 817. ("[The ALJ] cannot be faulted for having failed to weigh the evidence never presented to him . . ..").

The ALJ considered the February 2007, emergency room visit for chest pain the plaintiff experienced from running in gym class. He noted that the pain was resolved and the plaintiff was released. In addition, the ALJ noted a May 30, 2007, heart checkup where Dr. Friedberg

opined that the plaintiff had no problems and was doing well. Lastly, the ALJ considered a need for continued monitoring of the plaintiff's health, which implies that future medical care may be necessary. The ALJ stated that the need for continued health monitoring was part of his reasoning for concluding that the plaintiff has some limitations in the domain of health and physical well-being. (Tr. 30). The plaintiff, however, fails to state why this was an unreasonable finding given the evidence the ALJ had before him at the time of his decision.

Finally, the plaintiff asserts that the ALJ failed to fully consider her exercise intolerance issues. The ALJ considered the plaintiff's exercise tolerance problems when he discussed the results of the plaintiff's stress test. (Tr. 27). The ALJ cited the opinion of the plaintiff's doctor that the plaintiff was in the 10th percentile for people her age, and this reflected some exercise intolerance. (Tr. 27, 132). The evidence in the record also indicates that the plaintiff's cardiologist opined that the plaintiff could benefit from some more exercise and physical activity. (Tr. 132). The record contains no medical opinions to the contrary. The plaintiff fails to explain why evidence of only some exercise intolerance required a finding of "marked," or greater limitations in this domain, when the exercise intolerance during the stress test did not come from a heart abnormality, but rather muscle fatigue. In addition, her own cardiologist described her exercise tolerance as "slightly decreased." (Tr. 126, 132).

The ALJ acknowledged that the plaintiff has a severe congenital heart defect which causes some limitations in her health and physical well-being. However, he found that the opinions of Dr. Friedberg and the medical examiners from D.D.S. establish that although the plaintiff has some limitations in health and physical well-being, they are a "less than marked" limitation. Based on the evidence, the ALJ reasonably concluded that while the plaintiff

- 13 -

suffered a congenital heart defect, she exhibited "less than marked" limitations in the domain of physical health and well-being. Such conclusion is supported by the evidence of record.

**Whether the ALJ's Determination Regarding the Plaintiff's Ability to Move About and Manipulate Objects is Supported by Substantial Evidence.**

Moving about and manipulating objects refers to how a child moves her body from one place to another and how she moves and manipulates things. 20 C.F.R. § 416.926a(j). These actions are called "gross and fine motor skills." Id. For a child the plaintiff's age (nine-years-old) at the time of the decision, the Code of Federal Regulations states the following:

> As a school-age child, your developing gross motor skills should let you move at an efficient pace about your school, home, and neighborhood. Your increasing strength and coordination should expand your ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports. Your developing fine motor skills should enable you to do things like use many kitchen and household tools independently, use scissors, and write.

20 C.F.R. § 416.926a(j)(2)(iv).

> *Examples of limited functioning in moving about and manipulating objects.*
>
> The following examples describe some limitations . . . [and] do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage. . ..
>
> > (i) You experience muscle weakness, joint stiffness, or sensory loss . . . that interferes with your motor activities (e.g., you unintentionally drop things).
> >
> > (ii) You have trouble climbing up and down stairs, or have jerky or disorganized locomotion or difficulty with your balance.
> >
> > (iii) You have difficulty coordinating gross motor movements (e.g., bending, kneeling, crawling, running, jumping rope, or riding a bike).
> >
> > (iv) You have difficulty with sequencing hand or finger movements.
> >
> > (v) You have difficulty with fine motor movement (e.g., gripping or grasping objects).

- 14 -

>           (vi) You have poor eye-hand coordination when using a pencil or
>           scissors.

The ALJ determined that the plaintiff had no limitation of function in the domain of moving about and manipulating objects. However, the plaintiff maintains that her heart condition and limited exercise intolerance also significantly affects her ability to move about. The plaintiff states that she must constantly be careful not to over-exert herself, and she had stress test results that showed her scoring in the 10th percentile for her age group. She also cites her leg pain and blurred vision that caused her to walk into a door, resulting in physical injury. She agrees that she is severely "limited" in the domain of moving about and manipulating objects.

The ALJ based his determination of the plaintiff's ability to move about and manipulate objects on medical evidence from Dr. Friedberg, Dr. Chan's evaluation – which Dr. Ibler affirmed – the testimony of the plaintiff and her mother at the hearing and medical evidence, including updated medical records submitted after the hearing. (Tr. 27-28). The ALJ stated that the evidence showed the plaintiff had heart surgery for truncus arteriosis, and a second surgery to exchange the homograft. The ALJ further noted that there was a stress test on May 24, 2006, in which the plaintiff scored in the 10th percentile for her age group and had some breathing problems that required an albuterol inhaler. (Tr. 27). The ALJ observed that updated evidence showed Dr. Friedberg's opinion that the plaintiff "was found to have no problems and to be doing well," and that the stress test showed "'some level of exercise intolerance.'" (Tr. 27).

The ALJ considered, however, the stress test when he stated that the test results showed no cardiac abnormalities, but that the plaintiff's results in the tenth percentile reflected

"'some level of exercise intolerance.'" (Tr. 27). The plaintiff also points to the report from Dr. Friedberg, on May 30, 2007, where a limited exercise tolerance was noted again; however, the ALJ considered that report in his decision when he noted that Dr. Friedberg opined that the plaintiff had no problems, was doing very well, and only complained about being slightly limited in gym class. (Tr. 27).

The plaintiff also points to evidence of blurred vision that her mother said caused her to walk into a door. Although the ALJ did not directly address the plaintiff's vision problems or her leg pain, he reviewed the D.D.S. evaluation which considered the medical evidence of record. Dr. Chan determined that the plaintiff had no limitation in moving and manipulating objects. (Tr. 28, 122). Dr. Ibler then affirmed the initial evaluation done by Dr. Chan showing no limitations with moving about and manipulating objects. (Tr. 119, 122). An eye examination dated January 25, 2005, showed that the plaintiff had a vision problem, namely refractive amblyopia, but that she "should be able to do most child appropriate activities." (Tr. 115). Although the plaintiff's mother said that leg pain prevents the plaintiff from moving her legs for periods of time, the plaintiff did not mention leg pain at the hearing. Rather, when she was asked by the ALJ "[w]hen you do hurt, where does it hurt, where do you hurt?", she replied that she had pain in her side and chest. (Tr. 262). Also, the case development worksheet dated January 24, 2005, merely lists a circulation problem in the plaintiff's legs which apparently is related to her heart condition. There is no test results or other medical evidence to indicate that the plaintiff is limited by severe leg pain. The ALJ relied on these DDS evaluations which specifically addressed the domains of functioning, and the other medical evidence in determining that the plaintiff had no limitation in the domain of moving and manipulating objects. The ALJ is not required to address every single piece of evidence in the

- 16 -

record. Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002). ("Though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning.").

The medical evidence of record does not support the plaintiff's contention that she has a "marked" or "extreme" limitation in her ability to move about and manipulate objects. Therefore, the ALJ reasonably concluded that the plaintiff exhibited no limitations in her ability to move about and manipulate objects.

In sum, the ALJ properly evaluated the evidence in the record and adequately articulated his reasons for denying the plaintiff's claim for children's SSI. The ALJ's decision is supported by substantial evidence – "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). Accordingly, the court concludes that substantial evidence supports the ALJ's decision that the plaintiff is not disabled and is not entitled to children's SSI. Therefore, the plaintiff's appeal is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this case be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of the Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 9th day of October, 2009.

BY THE COURT:

s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

- 17 -

Case 2:08-cv-00548-PJG   Filed 10/09/09   Page 17 of 17   Document 14